**BRODSKY & SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN DiMARCO,<br><br>          Plaintiff,<br><br>      vs.<br><br>ALBIREO PHARMA, INC., DAVID CHISWELL, SUSAN ALESINA, RON COOPER, HABIB DABLE, MICHAEL GUTCH, CRAIG HOPKINSON, STEPHANIE S. OKEY, and DAVEY S. SCOON,<br><br>          Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(2) Violation of § 14 (d) of the Securities Exchange Act of 1934<br>(3) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Brian DiMarco ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1. Plaintiff brings this stockholder action against Albireo Pharma, Inc. ("Albireo" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(e), 14(d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Ipsen Pharma SAS ("Ultimate Parent"), through merger

vehicles Ipsen Biopharmaceuticals, Inc. ("Parent") and Anemone Acquisition Corp. ("Merger Sub" collectively with Parent and Ultimate Parent, "Ipsen") as a result of an unfair process, and to enjoin an upcoming tender off on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a January 9, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Albireo shareholders will receive $42.00 in cash in exchange for each share of Albireo as well as one Contingent Value Right ("CVR") entitling the holder to deferred cash payments of $10.00 per share contingent upon the U.S. Food and Drug Administration (FDA) approval of certain Company drug products by December 31, 2027. As a result of the consummation of the Proposed Transaction, Albireo will become an indirect wholly-owned subsidiary of Ipsen.

3. Thereafter, on January 23, 2022, Albireo filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, the Recommendation Statement describes an insufficient process with only one goal in mind – to sell the Company to Ipsen.

5. Notably, the Recommendation Statement fails to disclose whether a committee of disinterested directors was appointed to manage the sales process, and if so, what powers that committee had in reviewing the Proposed Transaction, including whether the committee had the ability to veto a potential transaction that was not in the best interests of shareholders.

6. Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with

no thought to Plaintiff as a public stockholder. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Recommendation Statement with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their Albireo shares in favor of the Proposed Transaction. The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Albireo, provided by Albireo to the Company's financial advisors Centerview Partners LLC ("Centerview") and Chestnut Partners, Inc. ("Chestnut"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Centerview and/or Chestnut and provided to the Company and the Board. Accordingly, this action seeks to enjoin the Proposed Transaction.

8.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

9.      Plaintiff is a citizen of Massachusetts and, at all times relevant hereto, has been an Albireo stockholder.

10.    Defendant Albireo is a pharmaceutical company and a leading innovator in bile-acid modulators to treat pediatric and adult cholestatic liver diseases. Albireo is incorporated under the laws of the State of Delaware and has its principal place of business at 10 Post Office Square, Suite 502 South, Boston, MA 02109.  Shares of Albireo common stock are traded on the Nasdaq Stock Exchange under the symbol "ALBO".

11.    Defendant David Chiswell ("Chiswell") has been a Director of the Company at all relevant times and serves as the Chairman of the Company Board.

12.    Defendant Susan Alesina ("Alesina") has been a Director of the Company at all relevant times.

13.    Defendant Ron Cooper ("Cooper") has been a director of the Company at all relevant times and serves as the Company's Chief Executive Officer ("CEO").

14.    Defendant Habib Dable ("Dable") has been a director of the Company at all relevant times.

15.    Defendant Michael Gutch ("Gutch") has been a director of the Company at all relevant times.

16.    Defendant Craig Hopkinson ("Hopkinson") has been a director of the Company at all relevant times.

17.    Defendant Stephanie S. Okey ("Okey") has been a director of the Company at all relevant times.

18.    Defendant David S. Scoon ("Scoon") has been a director of the Company at all relevant times.

19.    Defendants identified in ¶¶ 11 - 18 are collectively referred to as the "Individual Defendants."

COMPLAINT

20.     Non-Party Ipsen Pharma SAS is a biopharmaceutical company headquartered in Paris, France, with a focus on transformative medicines in three therapeutic areas: oncology, rare disease and neuroscience.

21.     Non-Parties Parent and Merger Sub are affiliates of Ultimate Parent created to effectuate the proposed transaction.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(d), 14(e), and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

23.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

25.    Albireo is a commercial-stage biopharmaceutical company that focuses on the development and commercialization of novel bile acid modulators to treat orphan pediatric liver diseases and other liver or gastrointestinal diseases and disorders. The Company offers Bylvay for the treatment of progressive familial intrahepatic cholestasis, as well as in Phase III clinical trial for treating biliary atresia, alagille syndrome, and rare and life-threatening disorder to children; and Elobixibat for the treatment of chronic constipation and other functional diseases. It also engages in the developing of A3907, which is in Phase I clinical trial for the treatment of adult liver diseases; and A2342, a preclinical candidate to treat adult viral and liver diseases.

26.    The Company's most recent clinical performance press release, revealing results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid operational performance.  For example, in the November 8, 2022 press release announcing its 2022 Q3 Financials, the Company highlighted such positive results as an increase in product net revenue from $1.1 million the previous quarter to $7.5 million.

27.    Speaking on these positive results, Company CEO and defendant Cooper stated as follows, "I am pleased with this quarter's growth in Total Bylvay PFIC patients and Bylvay sales. With the new native liver survival evidence presented at scientific congresses, our value proposition has strengthened."  Cooper continued speaking on the Company's positive future prospects, "We are expanding Bylvay's reach even further as our Phase 3 BOLD study in biliary atresia is fully enrolled with topline results planned for 2024. Having completed a royalty monetization deal for Bylvay we strengthened our cash runway, providing enough resources to execute on our plans for Bylvay, A3907 and A2342."

COMPLAINT

28.    These positive clinical results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Albireo.  Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

29.    Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Albireo to enter into the Proposed Transaction without providing requisite information to Albireo stockholders such as Plaintiff.

***The Flawed Sales Process***

30.    The Recommendation is materially deficient. The Recommendation Sheet fails to disclose whether a committee of disinterested directors was appointed to run the sale process, and if so, the specific powers that committee had in evaluating a potential transaction.

31.    The Recommendation Statement fails to disclose adequate reasoning as to why the board agreed to uncertain consideration through a CVR rather than additional value for each share.

32.    The Recommendation Statement also fails to disclose why a second, additional financial advisor, Chestunt, was engaged at a cost of $6 million to the Company despite seemingly not providing any fairness statement or financial analyses to the Board.

33.    In addition, the Recommendation Statement is silent as to the nature of the confidentiality agreements entered into between the Company and potentially interested third parties, including Ipsen, throughout the sales process, if any, and whether these agreements differ from each other, and if so in what way.

34.    The Recommendation Statement also fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and any potentially interested third parties, including Ipsen, throughout the sales process, if any, would fall away.

35.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

36.     On January 9, 2023, Albireo and Ipsen issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **PARIS, FRANCE & BOSTON, U.S.,** 09 January 2023 – Ipsen (Euronext: IPN: ADR: IPSEY) and Albireo (Nasdaq: ALBO) today announced that they have entered into a definitive merger agreement under which Ipsen will acquire Albireo, a leading innovator in bile-acid modulators to treat pediatric and adult cholestatic liver diseases. The anticipated acquisition will enrich Ipsen's Rare Disease portfolio and pipeline.
>
> The lead medicine in Albireo's pipeline is Bylvay ® (odevixibat), a potent, once-daily, oral, non-systemic ileal bile acid transport inhibitor (IBATi). Bylvay was approved in 2021 in the U.S. for the treatment of pruritus in patients three months of age and older with progressive familial intrahepatic cholestasis (PFIC)1, and in the E.U. for the treatment of PFIC in patients aged six months or older.2 Pruritus is one of the most prominent and problematic manifestations of the disease,3 often resulting in severely diminished quality of life.4 Bylvay has orphan exclusivity for the approved indications in PFIC in the U.S. and E.U.
>
> "We are excited about the potential of Albireo's assets and scientific expertise, which we gain through this acquisition, and we believe this is a compelling growth opportunity for Ipsen." said David Loew, Chief Executive Officer of Ipsen. "Our Rare Disease franchise is strengthened with Bylvay, which, in addition to being the first-approved treatment in PFIC, has two further indications being investigated in rare liver conditions that are underserved. Additionally, Bylvay and the clinical and preclinical novel bile acid transport inhibitors in Albireo's portfolio complement our own pipeline in liver disease."
>
> "Unwavering dedication to patients and commitment to science have always been the north star for Albireo. This focus has driven us to develop and gain approval for Bylvay as the first drug treatment for PFIC," said Ron Cooper, President and Chief Executive Officer of Albireo. "Our talented team at Albireo have advanced the first Phase III studies in three different pediatric liver diseases while discovering two promising new clinical stage bile acid modulators. We believe that Ipsen is well positioned to apply its global R&D and commercial capabilities to make these medicines available to more cholestatic liver disease patients and accelerate the mission of providing hope for families. "

In addition to this lead indication, Albireo announced in December 2022 that supplementary regulatory filings have been made for Bylvay in the E.U. and the U.S. for Alagille syndrome (ALGS). ALGS is a rare, genetic disorder that can affect multiple organ systems, including the liver, with a paucity of bile ducts preventing bile flow from the liver to the small intestine. The most debilitating symptom of ALGS is severe pruritus.5 In the Phase III ASSERT trial, treatment with Bylvay met both primary and secondary endpoints and was associated with statistically significant improvements in pruritus severity and reductions in serum bile acid levels compared to placebo, and was well tolerated.6

Furthermore, Bylvay is in late-stage development for biliary atresia (BA). It is currently being investigated in the BOLD study, the first, prospective double-blind, Phase III clinical trial in BA, a rare, pediatric liver disease that can result in cirrhosis and liver failure and is the leading cause of liver transplantation among children.7 Orphan drug designations have been granted in both ALGS and BA indications in the U.S. and E.U.

As part of the transaction, Ipsen will also acquire Albireo's clinical stage asset A3907, a novel oral systemic apical sodium-dependent bile acid transporter (ASBT) inhibitor currently in development for adult cholestatic liver disease, such as primary sclerosing cholangitis (PSC), which could complement Ipsen´s existing development programs. In addition to Bylvay and A3907, Albireo's pipeline includes A2342, an oral systemic sodium-taurocholate co-transporting peptide (NTCP) inhibitor being evaluated for viral and cholestatic diseases, which is moving ahead in investigational new drug (IND)-enabling trials.

Financial highlights

The acquisition of Albireo will provide immediate incremental sales and strengthen Ipsen's rare disease infrastructure. Albireo guided for total Bylvay revenues of $24 million for 2022. Given the level of ongoing R&D expenses, the transaction is expected to be dilutive to Ipsen's core operating income until the end of 2024. This is in line with Ipsen's medium-term outlook regarding its strategic focus on building a high-value and sustainable pipeline through external innovation. The Group will provide its annual guidance for 2023 in February.

Transaction details

Under the terms of the agreement and plan of merger, Ipsen, through a fully-owned subsidiary, will initiate a tender offer to acquire all outstanding shares of Albireo at a price of $42.00 per share in cash at the closing of the transaction, for an initial estimated aggregate consideration of $952 million plus one contingent value right (CVR) per share. Each CVR will entitle its holder to deferred cash payments of $10.00 per CVR payable upon the U.S. Food and Drug Administration (FDA) approval of Bylvay in the Biliary Atresia indication at the latest by 31 December 2027, allowing for a potential increase in the number of patients in the BOLD study.

COMPLAINT

The $42.00 per-share cash consideration represents a premium of 104% compared to Albireo's 1-month volume-weighted average price of $20.60 preceding announcement of the transaction. The transaction will be fully financed by Ipsen's existing cash and lines of credit. The Board of Directors of Albireo has unanimously approved the transaction and recommended that the stockholders of Albireo tender their shares in the tender offer.

The closing of the tender offer will be subject to customary conditions, including the tender of shares which represent at least a majority of the total number of Albireo's outstanding shares, the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and the receipt of consents of, or filings with, any governmental body or pursuant to certain foreign antitrust laws and the expiration of any applicable waiting period and other customary conditions. Upon the successful completion of the tender offer, Ipsen would acquire all shares not acquired in the tender offer through a second-step merger for the same consideration that the tendering stockholders will receive in the tender offer. It is anticipated the transaction will close by end of Q1, 2023.

Advisors

Goldman Sachs is acting as exclusive financial advisor to Ipsen and Orrick Herrington & Sutcliffe LLP as legal counsel to Ipsen. Centerview Partners is serving as exclusive financial advisor to Albireo. Chestnut Partners also provided advice to Albireo. Paul, Weiss, Rifkind, Wharton & Garrison and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C are serving as legal counsel to Albireo.

### *Potential Conflicts of Interest*

37. The breakdown of the benefits of the deal indicates that Albireo insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Albireo.

38. Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.

COMPLAINT

39.     Additionally, the Recommendation Statement fails to account for accounting of all stockholders who own more than 5% of the Company's outstanding stock, despite several such holders existing.

40.     In addition, Company insiders, currently own large, illiquid portions of stock options, restricted share, or other equity award, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction.   Notably, the Recommendation Statement fails to account for these amounts or for the consideration they will be exchanged for in the Proposed Transaction.

41.     In addition, certain employment agreements with certain Albireo executives, entitle such executives to significant amounts of money conditioned upon the consummation of the merger and/or their termination.  These 'golden parachute' packages are significant and will grant each director or officer entitled to them significant sums of money, compensation not shared by Plaintiff as follow:

| Name | Cash ($)(2) | Equity ($)(3) | Perquisites/ Benefits ($)(4) | Tax Reimbursement ($)(5) | Total ($) |
|---|---|---|---|---|---|
| Ronald H.W. Cooper. | 3,256,504 | 13,099,419 | 60,000 | 0 | 16,415,923 |
| Simon N.R. Harford | 2,089,138 | 2,586,585 | 52,500 | 0 | 4,728,223 |
| Martha J. Carter. | 2,067,385 | 2,466,491 | 52,500 | 0 | 4,586,376 |
| Patrick T. Horn, M.D., Ph.D.(1) | 0 | 0 | 0 | 0 | 0 |

42.     The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is

necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

43.     Thus, while the Proposed Transaction is not in the best interests of Albireo, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Recommendation Statement***

44.     On January 23, 2023, the Albireo Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

45.     Specifically, the Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Recommendation Statement fails to disclose:

a.  Adequate information as to whether a committee of disinterested directors was appointed to lead the sales process and if so, the powers to which they were authorized in reference to any proposed transaction;

b.  Adequate disclosure as to why the Board agreed to uncertain consideration through a CVR rather than more definite consideration;

- 12 -
COMPLAINT

c.  Adequate information as to why the Board engaged Chestnut as an additional financial advisor at a cost of $6 million despite Chestnut not providing a fairness opinion;

d.  Whether the terms of any confidentiality agreements entered during the sales process between Albireo on the one hand, and any other third party (including Ipsen), if any, on the other hand, differed from one another, and if so, in what way;

e.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties (including Ipsen) throughout the sales process, if any, would fall away; and

f.  The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Albireo's Financial Projections*

46.  The Recommendation Statement fails to provide material information concerning financial projections for Albireo provided by Albireo management and relied upon by Centerview in its analyses.  The Recommendation Statement discloses management-prepared financial projections for the Company which are materially misleading.

47.    Notably, in connection with its fairness opinion rendered to the Company Board regarding the Proposed Transaction, Centerview notes that it reviewed, "internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of Albireo, including certain financial forecasts, analyses and projections and probabilities of success relating to Albireo and the probability of realizing the Milestone prepared by management of Albireo and furnished to Centerview by Albireo for purposes of Centerview's analysis."

48.    The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that Albireo management provided to the Board and Centerview.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

49.    With regard to *Projections* created by Albireo management, the Recommendation Statement fails to disclose material line items for all projection metrics provided, including specifically:

a. Unlevered Free Cash Flow, including the underlying inputs, metrics, and assumptions used to determine this metric, including specifically: earnings before interest expense and taxes ("EBIT"), tax expense, capital expenditures, depreciation and amortization, the Sagard Royalty, and increases in net working capital.

50.  With regard to *Other Scenarios – Case A, Case C, and Case D* forecasts created by Albireo management, the Recommendation Statement fails to disclose material line items for all projection metrics provided, including specifically:

    a.  EBIT, including the underlying inputs, metrics, and assumptions used to determine this metric, including specifically: earnings, interest expenses, and taxes; and

    b.  Unlevered Free Cash Flow, including the underlying inputs, metrics, and assumptions used to determine this metric, including specifically: earnings before interest expense and taxes ("EBIT"), tax expense, capital expenditures, depreciation and amortization, the Sagard Royalty, and increases in net working capital.

51.  The Recommendation Statement fails to provide the reasoning or basis for the underlying assumptions upon which each of Case A, Case C, or Case D is based upon, nor each assumptions inputs and analysis.

52.  The Recommendation Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

53.  This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

54.  Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Centerview's financial analyses, or make an informed decision whether to tender his shares in favor of the

Proposed Transaction. As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Centerview*

55.     In the Recommendation Statement, Centerview describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

56.     With respect to the *Analysis of Consideration*, the Recommendation Statement fails to disclose the following:

   a. The specific "probability of realizing the milestone under the CVR Agreement" as well as the inputs, metrics, and assumptions underlying the that utilized probability rate;

   b. The specific "estimated timing of achievement of the milestone under the CVR Agreement" as well as the inputs, metrics, and assumptions underlying that utilized timing;

   c. The specific inputs, metrics, and assumptions used to determine a the utilized discount rate range of 11.5% to 14.5%; and

   d. Albireo's weighted average cost of capital utilized.

57.     With respect to the *Selected Public Company Analysis*, the Recommendation Statement fails to disclose the following:

COMPLAINT

    a.   The specific inputs, metrics, and assumptions used to determine a the utilized EV/2023E Revenue Trading Multiples of 3.0x to 6.5x; and

    b.   The specific number of fully-diluted outstanding Company shares as of January 6, 2023.

58.    With respect to the *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose the following:

    a.   The specific value of each selected precedent transaction;

    b.   The specific date on which each selected precedent transaction closed;

    c.   The specific inputs, metrics, and assumptions used to determine a the utilized EV / NTM Revenue Multiples of 5.0x to 9.5x; and

    d.   The specific number of fully-diluted outstanding Company shares as of January 6, 2023.

59.    With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

    a.   The specific inputs, metrics, and assumptions used to determine a the utilized discount rate range of 11.5% to 14.5%;

    b.   Albireo's weighted average cost of capital utilized;

    c.   The implied terminal value of Albireo calculated;

    d.   The specific inputs, metrics, and assumptions used to determine that Albireo's unlevered free cash flows would decline in perpetuity after December 31, 2045 at a rate of free cash flow decline of 60% year over year; and

    e.   The specific number of fully-diluted outstanding Company shares as of January 6, 2023.

COMPLAINT

60.    With respect to the *Analyst Price Target Analysis*, the Recommendation Statement fails to disclose the following:

    a. The specific price targets utilized; and

    b. The identity of the firm and/or analysts that created the utilized price targets.

61.    With respect to the *Precedent Premiums Paid Analysis*, the Recommendation Statement fails to disclose the following:

    a. The specific premiums paid in selected transactions utilized; and

    b. The specific inputs, metrics, and assumptions used to determine the utilized premium range of 50% to 80% to Albireo's closing stock price on January 6, 2023.

62.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

63.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Albireo stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

### FIRST COUNT

### Violations of Section 14(e) of the Exchange Act

### (Against All Defendants)

64.    Plaintiff repeats all previous allegations as if set forth in full herein.

65.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

66.     Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.].

67.     The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

68.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

69.     The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

70.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

71.     Plaintiff has no adequate remedy at law.

COMPLAINT

## SECOND COUNT

### Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9

### (Against all Defendants)

72.     Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

73.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

74.     Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

75.     SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

76.     Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

77.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

78.     Plaintiff has no adequate remedy at law.

**THIRD COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

79.     Plaintiff repeats all previous allegations as if set forth in full herein.

80.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

81.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Recommendation Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

82.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Albireo' business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information

- 21 -

available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

83.    The Individual Defendants acted as controlling persons of Albireo within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Albireo to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Albireo and all of its employees.  As alleged above, Albireo is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.    Enjoining the Proposed Transaction;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.


Dated: January 24, 2023                              **BRODSKY & SMITH**

By: *Evan J. Smith*

Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*

- 23 -
COMPLAINT